IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>
*Southern Division*

|  |  |  |
|---|---|---|
| **EARL STONE,** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | **Case No.: GJH-17-353** |
| **TOWN OF CHEVERLY, MARYLAND,** *et al.*, | * | |
|  | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiffs Earl Stone, Ed Gizinski, and Joseph Frohlich (collectively, "Plaintiffs") brought this civil lawsuit alleging a pattern of discrimination and retaliation by the Town of Cheverly, Maryland ("the Town"), the Cheverly Police Department ("the Police Department"), Chief of Police Harry Robshaw ("Chief Robshaw"), Town Administrator David Warrington ("Administrator Warrington"), and Sergeant Jarod Towers ("Sergeant Towers"). ECF No. 2.[1] Plaintiffs sought remedies under a bevy of local, state, and federal laws. *Id.* The only claim remaining for this Court to address is Plaintiff Gizinski's civil rights conspiracy claim under 42 U.S.C. § 1985(2). *See* ECF Nos. 39 & 52. Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 51. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's civil rights conspiracy claim under 42 U.S.C. § 1985(2) is dismissed.

---

[1] Frohlich filed his complaint separately and did not pursue any claims against Sergeant Towers. *See Forhlich v. Town of Cheverly*, No. 16-2592, ECF No. 2 (D. Md. 2016). After a conference call with the parties on February 16, 2017, the Court ordered that the two cases be consolidated for motions practice and discovery. ECF No. 18. For clarity, the Court will cite to "ECF No. __" for documents in the Stone/Gizinski case and "ECF No. __ (Case No. 16-2592)" for documents in Frohlich's case.

1

**I.    BACKGROUND[2]**

    **A.    Factual Background**

The background facts of this action were fully set forth in this Court's Memorandum Opinion of August 5, 2017. ECF No. 33-1. However, a summary of the facts relevant to the instant motion are laid out below.

Gizinski was a Corporal in the Police Department and served as a union representative for the Fraternal Order of the Police ("FOP") until he was discharged in April 2015. ECF No. 2 ¶ 46; ECF No. 23-3 ¶ 16; ECF No. 23-11 ¶ 1. According to Plaintiffs Gizinski and Stone, from 2008 to at least 2015, Chief Robshaw and Administrator Warrington retaliated against employees of the Town who engaged in protected activity. ECF No. 2 ¶ 48; ECF No. 23-3 ¶¶ 4–8; ECF No. 23-11 ¶¶ 8–11. Specifically, Chief Robshaw made regular statements at staff meetings threatening to punish anyone who reported unfair or unlawful practices. ECF No. 2 ¶ 49; ECF No. 23-3 ¶ 5. For example, Chief Robshaw said, "if you challenge me, I will win, I will stack the trial board and fire you," promising that if officers complained, he would "make sure you never do police work again." ECF No. 2 ¶ 54; *see* ECF No. 23-2 ¶¶ 6, 8. Another time with respect to officer complaints, Chief Robshaw said "[f]uck you, fuck the FOP, fuck your attorney, fuck anyone who tries to fuck with me." ECF No. 2 ¶ 52; ECF No. 23-11 ¶ 11. Plaintiffs Gizinski and Stone allege that the Mayor and the Town Council have known of this conduct since 2008 and have not taken adequate measures to stop it. ECF No. 2 ¶ 48.

Plaintiffs worked with another officer named Francis Schmidt during their time with the Police Department. *Id.* ¶ 23.[3] In December 2009, Chief Robshaw allegedly became intoxicated

---

[2] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.
[3] Schmidt's own claims against the Police Department were the subject of a separate litigation, *Schmidt v. Town of Cheverly, MD.*, 212 F. Supp. 3d 573 (D. Md. 2016) (hereinafter, "*Schmidt*"), and have since been resolved, ECF No. 39.

2

and "shoved a pool cue" under Schmidt's wife's skirt at a Christmas party. *Id.* ¶ 56; ECF No. 23-1 ¶ 17; ECF No. 23-11 ¶ 6. After the incident at the Christmas party, Chief Robshaw allegedly referred to Schmidt as a problem that they needed to "get rid of." ECF No. 2 ¶ 58; ECF No. 23-1 ¶ 17.

On September 29, 2011, Schmidt suffered a hernia while at work, rendering him unable to work. ECF No. 2 ¶ 75; ECF No. 23-11 ¶ 12. In early October 2011, Schmidt requested sufficient leave to allow for his medical treatment and filed a claim for workers compensation benefits. ECF No. 2 ¶ 76; ECF No. 23-11 ¶ 14. On or near October 5, 2011, Administrator Warrington and Chief Robshaw decided to terminate Schmidt. ECF No. 2 ¶ 81; ECF No. 23-11 ¶ 14–15.

During the fall of 2011, Schmidt filed an EEOC charge, asserting discrimination and retaliation. ECF No. 2 ¶ 80; ECF No. 23-7. The charge was cross filed with the state of Maryland and Prince George's Human Relations Commission. ECF No. 2 ¶ 80. Around December 5, 2011, Administrator Warrington and Chief Robshaw launched an investigation into whether or not Schmidt was involved in, and failed to report, a hit and run accident involving his police vehicle. *Id.* ¶¶ 86, 92; ECF No. 23-11 ¶ 22. According to the Complaint, the Defendants knew or should have known that Schmidt had not been involved in a hit and run accident. ECF No. 2 ¶ 93.

A trial board was held in 2012 on the charges against Schmidt in accordance with the Law Enforcement Officers' Bill of Rights ("LEOBR"). ECF No. 2 ¶¶ 25, 31; ECF No. 19-4 at 1. Gizinski alleges that he testified truthfully on behalf of Schmidt at this proceeding. ECF No. 2 ¶ 31; ECF No. 19-4 at 12. Schmidt was found not guilty of the alleged hit and run accident and not guilty of failing to report it. ECF No. 2 ¶ 102; ECF No. 19-4. The trial board did find Schmidt guilty of a minor infraction and recommended a 40 hour suspension and fine, but Chief

Robshaw imposed a more severe punishment and terminated Schmidt. ECF No. 2 ¶ 103–04; ECF No. 19-4. In the fall of 2013, the Circuit Court for Prince George's County ordered Schmidt's reinstatement and Schmidt returned to the police force in January 2014. ECF No. 2 ¶¶ 97, 106, 116.

In February 2014, the Police Department held a second LEOBR hearing regarding Schmidt. ECF No. 2 ¶ 62, 114; ECF No. 19-6 at 1. Again, Gizinski testified in support of Schmidt. ECF No. 2 ¶ 62; ECF No. 23-2 ¶ 13. At the second trial, Schmidt was cleared of "all major allegations." ECF No. 2 ¶ 116; ECF No. 19-6. However, in January 2015, Schmidt was terminated by Chief Robshaw for "alleged performance deficiencies." ECF No. 2 ¶ 62, 116. In the instant case, Gizinski contends that he was subject to retaliation because of his support for Schmidt in these proceedings. *Id.* ¶ 30, 249; ECF No. 23-3 ¶ 16.

Gizinski also submitted an affidavit to this Court in support of Schmidt's lawsuit. ECF No. 2 ¶ 107; *see also* ECF No. 19-78. The affidavit was signed on November 26, 2013 but was not filed with the Court until December 15, 2013. *See Schmidt v. Town of Cheverly, MD.*, No. 13-3282, ECF No. 18-5. In late November or early December, "someone" informed Chief Robshaw and Administrator Warrington of the affidavit. ECF No. 2 ¶ 108.

Gizinski alleges that because of his support of Schmidt, Chief Robshaw retaliated against him, taking actions that ultimately led to his termination from the Police Department. Gizinski claims in his Complaint that together, Chief Robshaw, Administrator Warrington, and Sergeant Towers conspired to retaliate against him for his support of Schmidt by subjecting him to a false internal affairs investigation. *Id.* ¶¶ 117–18. For example, he alleges that Sergeant Towers told an unnamed Prince George's County Police Officer that he would "do anything it takes to get rid of… Ed [Gizinski]." *Id.* ¶ 72. Then, in early 2014, Chief Robshaw, Administrator Warrington,

4

and Sergeant Towers placed a GPS device on Gizinski's police car without his knowledge. *Id.* ¶ 111; *see* ECF No. 19-21. Around January 30, 2014, Gizinski was informed that he was under investigation. ECF No. 2 ¶ 61. The GPS records obtained from the devices placed on their patrol cars were used as the basis to fire Gizinski for inaccurately filling out his daily duty logs, which listed the officer's locations during the day. *Id.* ¶ 112; *see* ECF No. 19-21.

Even after his termination, Chief Robshaw allegedly took further retaliatory action against Gizinski by filing false reports with the Maryland training commission and placing him on the "Brady" list[4], "effectively prevent[ing him] from ever again being employed as [a] police officer[ ]." ECF No. 2 ¶ 69. Prior to supporting Schmidt, Gizinski had excellent reviews and was never issued a written warning regarding his job performance. *Id.* ¶ 126.

Gizinski claims that Chief Robshaw arbitrarily imposes discipline on officers under his command, and that people who oppose him are subjected to internal investigation or brought up on charges before administrative trial boards. ECF No. 2 ¶ 121; ECF No. 23-3 ¶ 8. In contrast, officers who have not opposed or reported the unlawful conduct by the Defendants have engaged in serious misconduct and have not been disciplined. ECF No. 2 ¶ 121; ECF No. 23-3 ¶ 25. For example, when Frohlich asked Chief Robshaw if there was going to be an investigation into claims that another officer, Sergeant Lamb, had been involved in a hit and run accident and had been driving under the influence, Chief Robsaw said "[l]et it go, there isn't going to be an investigation." ECF No. 2 ¶ 123. In addition, Cheverly Police Department officers who engaged in disorderly conduct in Ocean City, Maryland in the spring of 2016 were never investigated or disciplined. *Id.* ¶ 122. Finally, Gizinski alleges that an unnamed person heard Administrator Warrington bragging that the Town is immune from EEOC charges because of his relationship

---

[4] Although not explained, the Court presumes this refers to a list of officers who have negative findings in their background that would require disclosure to defense counsel in any case in which they made an arrest.

with the Executive Director of Prince George's Human Relations Commission. *Id.* ¶ 127.

Gizinski filed his Charge of Discrimination with the EEOC on May 23, 2015. ECF No. 19-73. In his charge, Gizinski claimed that "[o]n or about December 2013," he engaged in protected activity when he supplied an affidavit in support of Officer Schmidt's Title VII lawsuit. *Id.* Gizinski claimed that in retaliation for his support of Schmidt, he was subject to harassment and was investigated for falsifying duty logs and insubordination. *Id.* Gizinski was suspended on August 6, 2014, and then discharged on April 7, 2015. *Id.*

On October 10, 2016, Gizinski notified the Town of his claims "once it became clear" that he would not be rehired. ECF No. 2 ¶ 128; *see also* ECF No. 19-81. He states that the Town was on "actual notice" of his claim because of the "pattern and practice of violating Plaintiffs' rights" and because his claim arises out of the same pattern and practice of misconduct alleged in the prior lawsuit brought by Officers Schmidt and Frohlich. ECF No. 2 ¶ 129. Gizinski states that he never received a right to sue letter from the EEOC, though one was received by Gizinski's former counsel on or about July 26, 2016. *Id.* ¶ 137.

### B. Procedural Background

Stone and Gizinski timely filed this case with the Circuit Court for Prince George's County on October 21, 2016. ECF No. 2 ¶ 138. Stone and Gizinski alleged violations of federal, state, and local law. Specifically, they brought the following ten claims: Age Discrimination in Violation of Federal, State, and Local Law (Count One – as to Stone only); EEO Retaliation in Violation of Federal, State, and Local Law (Count Two); Wrongful Discharge (Count Three); Statutory LEOBR violation (Count Four); First Amendment Retaliation and Unlawful Search and Seizure (Count Five); Common Law Conspiracy (Count Six); Statutory Conspiracy to Violate Civil Rights in Violation of Federal Law (Count Seven); Negligent

Retention/Supervision (Count Eight); Defamation (Count Nine); and Intentional Infliction of Emotional Distress (Count Ten). *Id.*

On February 6, 2017, Defendants removed the case to this Court, ECF No. 1, and, on February 13, 2017, filed a Motion to Dismiss, or in Alternative, for Summary Judgment, ECF No. 15. After a conference call with the parties on February 16, 2017, this Court ordered that the cases filed by Frohlich, Stone, and Gizinski be consolidated for motions practice and discovery. ECF No. 18. On March 28, 2017, Defendants filed a combined Motion to Dismiss, or Alternatively, for Summary Judgment, ECF No. 19. This Court granted, in part, and denied, in part, Defendants' motion, on September 5, 2017, dismissing all of Plaintiff Frohlich, Stone, and Gizinski's claims except for Plaintiff Stone and Frohlich's federal Age Discrimination claims and Plaintiff Stone and Gizinski's federal claims under 42 U.S.C. § 1985(2), alleging conspiracy to interfere with a witness testifying in court. ECF No. 33-1 at 31.[5] On September 18, 2017, Defendants filed an Answer to Plaintiffs' Complaint, addressing the remaining claims. ECF No. 36. On September 20, 2017, Defendants and Plaintiff Frohlich settled all claims relating to Plaintiff Frohlich including his remaining federal Age Discrimination claim. ECF No. 28 (Case No. 16-2592). Plaintiffs Stone and Gizinski then filed a Motion to Amend Judgment and For Reconsideration pursuant to Fed. R. Civ. P. 59 & 60 on October 10, 2017, ECF No. 40, which this Court denied on June 5, 2018, ECF Nos. 43 & 44.

Counsel for Stone and Gizinski filed a Consent Motion to Withdraw as Attorney for Plaintiffs on May 10, 2018, ECF No. 42, which this Court granted on July 6, 2018, ECF No. 45. Plaintiffs Stone and Gizinski have since proceeded *pro se*. Pursuant to a September 9, 2019 scheduling order, discovery was set to close on March 6, 2020 at which time the parties were

---

[5] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

7

instructed to file a status report. ECF No. 47. Defendants filed such a status report on March 10, 2020, informing this court that discovery is complete, there were no pending motions, Plaintiff Stone "agreed to dismiss all of his claims against Defendants as part of a settlement agreement[,]" Plaintiff Gizinski did not file a Rule 26(a)(1) Disclosure and did not engage in discovery, and Defendants planned to file a motion for summary judgment. ECF No. 49. Consequently, on June 11, 2020, this Court ordered that Defendants file a formal notice of settlement regarding Plaintiff Stone and a motion for summary judgment regarding Plaintiff Gizinski within thirty days of the order. ECF No. 50. On July 10, 2020, Defendants, following this Court's instruction, filed a formal notice of settlement regarding Stone and the instant Motion for Summary Judgment. ECF Nos. 51 & 52. A Rule 12/56 Notice was mailed to Plaintiff Gizinski on July 13, 2020, but he has not submitted an opposition to the instant motion. ECF No. 53.

## II. DISCUSSION

Before reaching the merits of Defendants' Motion for Summary Judgment, the Court must address Plaintiff Gizinski's lack of participation in this action. Over two years ago, Plaintiff Gizinski consented to his former counsel's Motion to Withdraw as Attorney and the Court granted that motion. ECF No. 42 & 46. Since that time, Plaintiff Gizinski has not had new counsel enter an appearance on his behalf and did not participate in discovery. ECF No. 49. Defendants have now moved for summary judgment—a motion to which Plaintiff offers no response. Faced with a similar situation, where a plaintiff had not been "serious about diligently pursuing their case[,]" and defendants had filed a summary judgment motion, Judge Benson Legg determined that where "the record has not been fully developed," dismissal is "the more appropriate disposition." *Tomey v. Baltimore Cty.*, No. CIV. L-09-390, 2011 WL 2457679, at *3

(D. Md. June 15, 2011). The Court follows a similar approach here.

### A.     Dismissal Under Federal Rule of Civil Procedure 37(b)(2)(A)

Under the Federal Rules of Civil Procedure, "[i]f a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just" including an order "dismissing the action or proceeding in whole or in part, [or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A); s*ee, e.g.*, *Tomey*, 2011 WL 2457679 (dismissing *pro se* litigants' case based upon plaintiffs' disregard for the Court's scheduling orders and failure to meaningfully participate in their own case); *McClain v. James M. Pleasants Co.*, No. 1:04CV1208, 2006 WL 435729, at *2 (M.D.N.C. Feb.22, 2006) (dismissing plaintiff's case for failure to comply with the scheduling order and to participate in discovery). In order to evaluate whether dismissal under Rule 37(b)(2)(A) is appropriate, the Fourth Circuit has articulated a four-factor test: a court must consider "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989). This Court finds that dismissal of Plaintiff Gizinski's final claim is well justified under the Fourth Circuit test.

#### 1.      Factor 1: Bad Faith

Regarding the first factor, this Court finds that Plaintiff has acted in bad faith by his noncompliance with this Court's Scheduling Order and his failure to respond to the instant motion. On September 9, 2019, this Court issued a Scheduling Order in this case instructing Plaintiff Gizinski that he had thirty days to retain new counsel and to have such counsel enter

their appearance before the beginning of discovery.[6] ECF No. 47. The Scheduling Order directed the Parties to complete all discovery by March 6, 2020.[7] *Id.* The Scheduling Order outlined the discovery process, set out the relevant deadlines, identified the federal and local rules that govern discovery, and directed the *pro se* litigants to where they could obtain copies of the rules. *See id.* However, according to the Status Report filed by Defendants on March 10, 2020, Plaintiff Gizinski "did not file a Rule 26(a)(1) Disclosure as required by the Scheduling Order and did not engage in any discovery." ECF No. 49. Defendants also tried to engage Plaintiff Gizinski in settlement discussions by mailing an offer letter to Plaintiff Gizinski's home address, but Gizinski has not responded. *Id.* Plaintiff Gizinski now fails to provide any opposition to Defendants' Motion for Summary Judgment, despite the provision of a Rule 12/56 Notice informing him that if he did not file a timely written response, "the Court may dismiss the case[.]" ECF No. 53 at 1. "With no attorney to blame, Plaintiff is responsible for this conduct." *Franklin v. Tri-Cty. Council for the Lower Eastern Shore of Maryland*, No. ELH-15-786, 2016 WL 3653966 (D. Md. July 8, 2016) (finding bad faith where a *pro se* plaintiff did not comply with the Court's instructions in the Scheduling Order and did not respond to discovery requests).

     Thus, Plaintiff Gizinski is in continuing violation of the Court's September 9, 2019 Order and has not engaged with this Court regarding this matter since at least that time. "All plaintiffs have an affirmative duty to actively monitor the progress of the lawsuits they bring and a responsibility to take steps to ensure the smooth progression of litigation." *Tomey*, 2011 WL 2457679, at *4. Plaintiff Gizinski's failure to engage with this case "is more than sufficient to support a finding of bad faith." *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 449 (D. Md. 2002)

---

[6] In addition to the Scheduling Order, the Clerk of Court notified Plaintiff Giziniski that "unless and until new counsel enters an appearance on [his] behalf[,]" he will be proceeding *pro se*. ECF No. 48-1.

[7] In what is clearly a typographical error, the Scheduling Order sets the date for initial disclosures as October 13, 2020, which would be several months after the close of discovery. ECF No. 47. This was apparently intended to be October 13, 2019.

10

(entering default judgment under Rule 37 where defendants did not comply with discovery orders and had not contacted the court in almost two years).

### 2. Factor 2: Amount of Prejudice

"When, as a result of a plaintiff's lack of participation, there has been little to no discovery in a case, the amount of prejudice to a defendant is substantial." *Doggett v. City of Hyattsville, Md.*, No. CIV.A. TDC-13-3889, 2014 WL 6471748, at *3 (D. Md. Nov. 17, 2014); *see also Watkins v. Trans Union LLC*, No. CIV.A. WMN-10-838, 2010 WL 4919311, at *1 (D. Md. Nov. 29 2010) ("The prejudice to Defendant of going forward with no discovery whatsoever from Plaintiff is readily apparent."). Plaintiff has not participated in discovery in the instant case and thus "Defendants have no means adequately to prepare their case, a situation that puts them at a distinct and prejudicial disadvantage." *Doggett*, 2014 WL 6471748, at *3. Therefore, the second factor cuts in favor of dismissal.

### 3. Factor 3: Need for Deterrence

"'[S]talling and ignoring direct orders of the court,' as Plaintiff has done here, 'must obviously be deterred' because such behavior 'undermines this Court's ability to manage [a] case effectively and fairly.'" *Franklin*, 2016 WL 3653966, at * 4 (alteration in original) (quoting *Johnson v. Diversified Consultants, Inc.*, No. PWG-15-1486, 2016 WL 1464549, at *3 (D. Md. Apr. 13, 2016)); *see also Hughley v. Leggett*, No. CIV.A. DKC-11-3100, 2013 WL 3353746, at *3 (D. Md. July 3, 2013) ("Plaintiff's complete lack of participation in the discovery process has directly inhibited and delayed the resolution of this dispute, and there is an obvious need to deter such conduct."). Moreover, based on Plaintiff Gizinski's continued unresponsiveness, despite defense counsel's continued efforts to move the case forward, it seems likely that this case will continue to be at a standstill. "Such inattentiveness and delay 'go to the heart of the court process

and totally inhibit a just resolution of disputes,' and therefore need to be deterred." *Doggett*, 2014 WL 6471748, at *4 (quoting *Vien v. Walker*, No. CIV. PJM-12-1796, 2014 WL 900803, at *2 (D. Md. Mar. 5, 2014)).

### 4. Factor 4: Effectiveness of Less Drastic Sanctions

"In cases where a plaintiff has been completely unresponsive in discovery, this court has found that any sanctions less drastic than dismissal of the case would be ineffective." *Doggett*, 2014 WL 6471748, at *4 (citing *McFeeley v. Jackson St. Entm't, LLC*, No. DKC-12-1019, 2014 WL 4182231, at *2 (D. Md. Aug. 19, 2014)). In fact, in cases like this one, where one party has brought the case to a halt by failing to participate in discovery, "the other relevant sanctions available under Rule 37 are a poor fit because their effectiveness depends on the lawsuit moving forward." *Id.*

Faced with Plaintiff Gizinksi's failure to meaningfully participate in his own case since the withdrawal of his former attorney, the Court see little choice but to order the dismissal of his last remaining claim against Defendants.

### B. Defendant's Motion for Summary Judgment

Although Plaintiff Gizinski's final claim is properly dismissed as a sanction, the Court, nevertheless, has reviewed the factual record relied on by the Defendants in support of their Motion for Summary Judgment.

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "Thus, summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, such as where the non-moving party has failed to make a sufficient showing on an essential element of the case that the non-moving party has the burden to prove." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 421 (4th Cir. 1996). The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 322–24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

As a preliminary matter, the Fourth Circuit has held that where a Plaintiff does not "indicate to the District Court any interest at all in contesting the motion for summary judgment[,]" *Atkinson v. Bass*, 579 F.2d 865, 867 (4th Cir. 1978), and instead does "absolutely nothing[,] . . . summary judgment, if appropriate, Shall be entered against him[,]" *id.* at 866 (accent in original). Otherwise, "it would mean that [the Plaintiff] could indefinitely continue to do nothing, and so without end stagnate the judicial process, although he was the claimant." *Id.* at 867. The Fourth Circuit has determined "neither the trial court nor the opposing parties should be subjected to such dilatory procedure." *Id.* (affirming the District Court's decision to grant

Defendants' motion for summary judgment where "[m]ore than two months elapsed between the service of the motion and the dismissal, without 'response' or appearance of any sort from plaintiff in regard thereto"). Summary judgment in favor of the Defendants would therefore be appropriate on this basis alone.

Turning to the merits, Plaintiff Gizinski's federal claim under 42 U.S.C. § 1985(2), alleging conspiracy to interfere with a witness testifying in court, is the only remaining claim before this court. Generally speaking, 42 U.S.C. § 1985(2) provides a private cause of action for conspiracy to interfere with civil rights. The Supreme Court has analyzed § 1985(2) as containing two discrete clauses. *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983). There are significant differences in the conduct covered by the two clauses.

The first clause addresses conspiracies to interfere with proceedings in federal courts and does not require discriminatory animus. *Id.* at 724–726. This clause, which has been referred to as a "deterrence claim," *Kimberlin v. Frey*, No. GJH-13-3059, 2015 WL 1431571, at *5 (D. Md. Mar. 26, 2015), imposes liability when:

> [T]wo or more persons . . . conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matters pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror;

42 U.S.C. § 1985(2).

In contrast, the second clause of § 1985(2) imposes liability when:

> [T]wo or more persons conspire for the purpose of impeding, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

14

42 U.S.C. § 1985(2). Unlike the first clause, this part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts and requires an allegation of class-based animus for the statement of a claim. *Kimberlin*, 2015 WL 1431571, at *3.

However, whether a plaintiff intends to proceed under clause one or clause two of § 1985(2), "an essential element in proving such a conspiracy [under § 1985(2)] is to show an agreement or a 'meeting of the minds by defendants to violate the claimant's constitutional rights.'" *Jackson v. Blue Dolphin Commc'ns of N.C., LLC*, 226 F. Supp. 2d 785, 790 (W.D.N.C. 2002); *see also Lewin v. Cooke*, 95 F. Supp. 2d 513, 525 (E.D. Va. 2000). Even considering the affidavits and other materials attached as exhibits to Plaintiff Gizinski's previous filings,[8] ECF Nos. 23 & 40—which were filed before his counsel withdrew and thus before Plaintiff stopped communicating with the Court—Plaintiff Gizinski has failed to provide any evidence that supports the existence of an agreement or meeting of the minds by the Defendants. *See Buschi v. Kirven*, 775 F.2d 1240, 1248 (4th Cir. 1985) ("It is well settled that mere allegations of conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient to support such an action against a motion for summary judgment based on affidavits establishing the absence of any participation."). Consequently, Plaintiff Gizinski "has failed to make a sufficient showing on an essential element of the case that [he] has the burden to prove." *Hinkle*, 81 F.3d at 421. The Defendants, therefore, would be entitled to summary judgment even if this case was not properly dismissed as a sanction under Fed. R. Civ. P. 37(b)(2)(A).

## III.   CONCLUSION

For the foregoing reasons Count VII of Plaintiff Gizinski's Complaint—*i.e.*, his § 1985(2) claim—is dismissed and this case will be closed. In light of this disposition, the

---

[8] Federal Rule of Civil Procedure 56(c)(3) allows—but does not require—a court to "consider other materials in the record" beyond materials cited in the Motion for Summary Judgment and related briefs.

Defendants' Motion for Summary Judgment, ECF No. 51, is determined to be moot. A separate Order shall issue.

Date: <u>September 30, 2020</u>                                   /s/_____
                                                                  GEORGE J. HAZEL
                                                                  United States District Judge